UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RALPH KOOGLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22 CV 17 MTS |
| | ) | |
| DAVID VANDERGRIFF, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Ralph Koogler for leave to commence this civil action without prepayment of the required filing fee. Doc. [2]. Having reviewed the motion, the Court finds that it should be granted. *See* 28 U.S.C. § 1915(a)(1). Additionally, for the reasons discussed below, the Court will direct plaintiff to file an amended complaint.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983. At the time he filed his complaint, he was incarcerated at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri. In the complaint, plaintiff names a

total of forty-five separate defendants, who are all sued in their individual and official capacities.[1]

Doc. [1] at 4-16. The allegations consist of numerous unconnected claims encompassing the

grievance procedure, excessive force, loss of property, sexual harassment, denial of meals, and

deliberate indifference to his medical needs.

In his "Statement of Claim," plaintiff begins by accusing Warden Vandergriff of ignoring

his kites and failing to investigate his complaints. *Id.* at 17. He then states that Deputy Warden

Cofer, Acting Deputy Bollinger, Assistant Warden Bingham, Acting Major McFerran, and Captain

Benson are all liable for doing the same thing.

With regard to FUM Heather Turner, plaintiff asserts that in May 2021, Turner made racist

comments to him, and that when he "filled an IRR it came up missing."

As to FUM Jason Turner, plaintiff states that he turned in an IRR on his "lost property" but

that Turner gave him "someone else['']s legal work, tablet, etc."

Concerning Caseworker Weber, plaintiff alleges that Weber has refused to answer his IRRs

and grievances regarding his lost property. He further states that Weber has "personally targeted"

him because Weber "has a personal problem with" him.

Regarding Caseworker Sumpter, plaintiff asserts that Sumpter has refused to give him

IRRs, came to work with COVID-19 and "refused to wear a mask." *Id.* at 18. Likewise, plaintiff

accuses Caseworker Williams of doing the exact "same as N. Sumpter."

---

[1] The defendants are: (1) ERDCC Warden David Vandergriff; (2) Deputy Warden Heather Cofer; (3) Acting Deputy Terrena Bollinger; (4) Assistant Warden Jerry Bingham; (5) Acting Major Sam McFerran; (6) Captain Stephen Benson; (7) Functional Unit Manager (FUM) Heather Turner; (8) FUM Jason Turner; (9) Caseworker Nicholas Weber; (10) Caseworker Nathan Sumpter; (11) Caseworker Jamie Williams; (12) Lieutenant Renne Neel; (13) Lieutenant Walter Jones; (14) Sergeant Beckett; (15) Sergeant Bighorse; (16) Sergeant Mickels; (17) Sergeant Warren; (18) Sergeant Lancaster; (19) Sergeant Farrel; (20) Sergeant Lee; (21) Sergeant Wallace; (22) Sergeant Weston; (23) Sergeant Bennett; (24) Correctional Officer (CO) Justin Ratliff; (25) CO Storey; (26) CO Worley; (27) CO Humel; (28) CO Jacob Smith; (29) CO Simmonton; (30) CO Wilson; (31) Property Officer Kane; (32) Sergeant Ervin; (33) Unidentified Medical Personnel; (34) Unknown Humel; (35) Unknown Don; (36) Unknown Terry; (37) Unknown Desuray; (38) Unknown Michalla; (39) Unknown Cad; (40) Jessica Carter; (41) Melissa Unknown; (42) Nurse Practitioner Ferguson; (43) Nurse Practitioner Rodriquez; (44) ERDCC; and (45) Missouri Department of Corrections.

With regard to Lieutenant Neel, plaintiff alleges that Neel came to his "door and cuffed [him] up to search [his] cell." While searching him, plaintiff states that Neel "rubbed her breast against" him and also touched him inappropriately. According to plaintiff, Neel told him she would "bring [him] anything [he] want[ed] in the prison," in return for sexual favors. He further states that she harassed him every day.

With respect to Lieutenant Jones, plaintiff contends that Jones "excessively sprayed [him] in the face" and took him "to a blind spot" where he was beaten "up by staff while in handcuffs." Jones also allegedly spit in plaintiff's face and placed him "on the bench for 11 hours."

As to Sergeant Beckett, plaintiff states that in November 2021, Beckett wrote him up for frivolous violations, and then refused to feed him, meaning that he "had to go without eating [until] lunch time." Similarly, on a different occasion, plaintiff asserts that Sergeant Bighorse refused to feed him and his cellmate after plaintiff accidentally dropped his tray. As before, he had to go without food until lunch, leaving him "hungry and disrespected."

In reference to Sergeant Warren, plaintiff alleges that "Warren sprayed [him] in the face at close range and had [him] assaulted in cuffs because she didn't like" plaintiff's "hand in the food port."

Concerning Sergeant Lancaster, plaintiff states that Lancaster refused to talk to him after Officer Humel sprayed him with mace and he was refused medical attention.

As for Sergeant Farrel, plaintiff asserts that Farrel "refused to feed" him after plaintiff "kicked the door" and caused a disturbance. *Id.* at 19. This led to plaintiff having to "go all night without eating," and being put on "meal loaf." He asserts that Sergeant Lee participated in this incident, and that he was "being targeted" by them "that night."

Regarding Sergeant Wallace, plaintiff states that Wallace "refused [him] rec" because of his race, and because plaintiff causes Wallace problems. He accuses Sergeant Weston of the same thing.

With regard to Officer Ratliff, plaintiff states that Ratliff "refused to feed [him] breakfast." He also states that Ratliff "wrote [him] up for a minor assault" after plaintiff "threw [his] meds on" Ratliff. Due to this, plaintiff spent forty days in administrative segregation, though he denies the assault. Plaintiff further alleges that Ratliff threatened to beat him up in the parking lot after he was released.

In reference to Officer Storey, plaintiff alleges that Storey "slammed [plaintiff's] finger in the food slot," after which plaintiff "was refused medical attention." He also states that Storey refused him showers.

As for Officer Worley, plaintiff complains that Officer Worley does not like him, has refused him showers, is disrespectful, and is "part of the problem" with Officer Ratliff and Officer Storey. *Id.* at 19-20.

As to Officer Humel, plaintiff states that Humel "sprayed [him] in the face with mace due to [him] putting [his] hand in the food slot." *Id.* at 20. He was then placed on a bench and refused a bathroom break, which "forced [him] to urinate and [defecate] on" himself. Plaintiff further alleges that Humel poured water over him, causing the mace "to burn more."

Concerning Officer Smith, plaintiff states that Smith wrote him up when he "refused to cuff up and get [his] cell searched," and also made threats to do him "bodily harm" and "spit in [his] food."

With respect to Officer Simmonton, plaintiff accuses Simmonton of coming on to him "in a sexual way," making sexually-tinged remarks to him, and of making "hearts on [his] window"

and blowing him kisses. During a search, he also alleges that Simmonton touched him inappropriately and in a sexual manner.

As to Officer Wilson, plaintiff states that "Wilson refused to take [his] mail and refused to put [his] kites in the box for the caseworker." He also states that Wilson will not feed him because of his race.

Regarding Property Officer Kane, plaintiff states that he lost $500 in property, though it is unclear what Kane did to cause this. *Id.* at 20-21. He accuses Sergeant Ervin of the same thing, though he fails to explain what Ervin did or did not do to cause the loss of plaintiff's property. *Id.*

As for medical worker Humel, plaintiff states that Humel refused to bring him his keep-on-person medication, and refused to bring back medication if he accidentally dropped it, leaving him in pain. He alleges that defendants Don, Terry, Desuray, Michalla, Cad, Carter, and Melissa Unknown all did the same thing.

With regards to Nurse Practitioners Ferguson and Rodriquez, plaintiff asserts that they have refused to answer health service requests and kites, and that they refuse "to handle medical issues."

Finally, plaintiff accuses the ERDCC of being responsible for all its staff members, and the Missouri Department of Corrections for "running ERDCC."

Based on these incidents, plaintiff states that he has been in pain due to refused medications and treatment, that his finger was injured, and that he has been sprayed in the face with mace. *Id.* at 22-23. He is seeking $2 million from the Missouri Department of Corrections and the ERDCC, and $500,000 each from every other defendant. *Id.* at 24.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging various constitutional violations against forty-five separate defendants. Because he

is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, the Court has determined that the complaint is defective and subject to dismissal. However, the Court will give plaintiff the opportunity to file an amended complaint.

## A.   Deficiencies in Complaint

Plaintiff's complaint is deficient and subject to dismissal for several reasons. First, his claims against the ERDCC and the Missouri Department of Corrections are barred by the doctrine of sovereign immunity. *See Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of [42 U.S.C.] § 1983 to override the traditional sovereign immunity of the States").

Second, plaintiff's official capacity claims fail, because they are treated as claims against defendants' employer, the State of Missouri itself. *See Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining that "neither a State nor its officials acting in their official capacity are 'persons' under § 1983").

Third, plaintiff has failed to state individual capacity claims against several of the named defendants because he has failed to connect each specific defendant to a constitutional violation. For example, with regard to the medical defendants, plaintiff makes a single vague allegation against one person, and then asserts that seven other people did the same thing. This is not sufficient to adequately allege each individual's personal responsibility. *See Mayorga v. Missouri*,

7

442 F.3d 1128, 1132 (8th Cir. 2006) (explaining that 42 U.S.C. § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights").

Fourth, even when plaintiff connects a defendant to a purportedly unconstitutional act, he does not present enough facts to demonstrate that a violation occurred. For instance, plaintiff makes excessive force claims regarding the use of mace. However, he never presents any supporting facts to establish that the use of force was unreasonable under the circumstances. *See Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"); and *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (explaining that "a limited application of [pepper spray] to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force").

Fifth, the Court notes that plaintiff often describes events that do not implicate his constitutional rights. For example, many of plaintiff's claims involve the grievance procedure, but defendants' alleged failure to respond to or grant his grievances does not violate a substantive constitutional right. *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"). Likewise, plaintiff's repeated accusations of verbal threats or harassment do not contain a constitutional dimension. *See Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992) ("Generally, mere verbal threats made by a state-actor do not constitute a [42 U.S.C.] § 1983 claim").

Finally, plaintiff has inappropriately joined together different claims occurring at different times involving different defendants. In point of fact, as previously discussed, plaintiff has named forty-five defendants and listed a variety of unconnected causes of action, including lost property,

excessive force, and deliberate indifference to his medical needs. Rule 20(a)(2) of the Federal

Rules of Civil Procedure governs joinder of defendants, and provides:

> Persons . . .  may be joined in one action as defendants if: (A) any
> right to relief is asserted against them jointly, severally, or in the
> alternative with respect to or arising out of the same transaction,
> occurrence, or series of transactions or occurrences; and (B) any
> question of law or fact common to all defendants will arise in the
> action.

Fed. R. Civ. P. 20(a)(2). While joinder of claims, parties, and remedies are encouraged under the

Federal Rules of Civil Procedure, permissive joinder is not applicable in all cases. *Mosely v.

General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). In particular, there are two specific

requisites for joinder, including the requirement that the asserted right to relief against each

defendant must arise out of the same transaction or occurrence. *Id*. As such, a plaintiff cannot join,

in a single lawsuit, multiple claims against different defendants related to events arising out of

different transactions or occurrences. In other words: "Claim A against Defendant 1 should not be

joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir.

2007). Here, plaintiff has attempted to join many unrelated claims, which he will not be allowed

to do.

Despite the deficiencies in his complaint, the Court will not dismiss it at this time. Instead,

plaintiff will be given the opportunity to amend his pleadings according to the instructions set forth

below. **In preparing his amended complaint, plaintiff must follow these instructions. Failure

to follow these instructions may result in the dismissal of his claims**.

### B. Amendment Instructions

Plaintiff should type or neatly print his amended complaint on the Court's civil rights form,

which will be provided to him. *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-

represented plaintiffs or petitioners should be filed on Court-provided forms"). If the amended complaint is handwritten, the writing must be legible.

In the "Caption" section of the Court-provided form, plaintiff should clearly name each and every party he is intending to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed.

Plaintiff should put his case number in the appropriate location on the upper right-hand section of the first page. He should then fill out the complaint form in its entirety, and ensure that it is signed.

In the "Statement of Claim" section, plaintiff should provide a short and plain statement of the factual allegations supporting his claim. *See* Fed. R. Civ. P. 8(a). Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b).

**The Court will not allow plaintiff to join unrelated claims in his amended complaint**. Thus, the amended complaint should only include claims that arise out of the same transaction or occurrence. **In other words, plaintiff should only include claims that are related to each other**. *See* Fed. R. Civ. P. 20(a)(2).

As noted above, plaintiff's complaint names forty-five separate defendants and contains allegations regarding numerous unconnected incidents. This is not permitted, and the Court will not allow plaintiff to simply bring every claim he has in a single lawsuit, without showing that the right to relief asserted against all the defendants arise out of the same transaction or occurrence. **If plaintiff insists on attempting to join unrelated claims, those unrelated claims will be**

**dismissed**. However, if plaintiff has multiple claims against a **single** defendant, he may name that person and set forth as many claims as he has against that defendant. *See* Fed. R. Civ. P. 18(a).

By way of example, plaintiff can bring allegations against multiple defendants relating to **one** of his use-of-force incidents. Conversely, he can choose **one** of the forty-five defendants and bring as many claims as he has against that single person.

In structuring his amended complaint, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write a short and plain statement of the factual allegations supporting his claim against that specific defendant. If plaintiff is suing more than one defendant, he should follow the same procedure for each defendant.

Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both. The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

If plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that 42 U.S.C. § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017). For example, if plaintiff is alleging excessive force against a defendant, he must provide facts demonstrating that the defendant's actions were unjustified and unreasonable under the circumstances.

The Court notes that plaintiff treats many of the defendants as an undifferentiated mass. If plaintiff is suing multiple defendants, it is important that he establish the responsibility of each

11

separate defendant for harming him. That is, for each defendant, plaintiff must allege facts showing how that particular defendant's acts or omissions violated his constitutional rights. It is not enough for plaintiff to make general allegations against all the defendants as a group, or to make allegations against one person, and simply attribute those actions to others. Rather, plaintiff needs to provide the role of each named defendant in this case, in order that each specific defendant can receive notice of what he or she is accused of doing. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim").

Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint. This means that claims that are not re-alleged in the amended complaint will be deemed abandoned. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. If plaintiff fails to file an amended complaint on a Court-provided form within thirty days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff.

**C. Motion to Appoint Counsel**

Plaintiff has filed a motion to appoint counsel. Doc. [3]. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation

12

is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. In particular, the Court notes that plaintiff's claim is deficient, and that he has been ordered to file an amended complaint. The Court will entertain future motions for appointment of counsel as the case progresses, if appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis, Doc. [2], is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel, Doc. [3], is **DENIED** at this time.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to plaintiff a copy of the Court's prisoner civil rights complaint form.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint on the Court-provided form within **thirty (30) days** of the date of this order, in accordance with the instructions set forth above.

**IT IS FURTHER ORDERED** that if plaintiff fails to file an amended complaint on the Court-provided form within **thirty (30) days** of the date of this order, in accordance with the

instructions set forth above, the Court will dismiss this action without prejudice and without further notice.

**IT IS FURTHER ORDERED** that upon the filing of plaintiff's amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915.

Dated this 13th day of April, 2022

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE